Jenny L. Dixon (SBN 192638)
HAHN LOESER & PARKS LLP
600 W. Broadway, Suite 1500
San Diego, California 92101
Telephone: (619) 810-4300
Facsimile: (619) 810-4301
Email: jldixon@hahnlaw.com

Attorneys for Plaintiff Angela Stanley

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA STANLEY, | Case No. |
| *Plaintiff,* | |
| vs. | **COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS, COMMON LAW FRAUD AND DECEIT, UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS PRACTICES (CAL. BUS. & PROFS. CODE §17200 ET SEQ.), BREACH OF CONTRACT, AND IMPOSITION OF CONSTRUCTIVE TRUST** |
| QUANTS CAPITAL MANAGEMENT, INC., a California Corporation, QUANTS FUND LP, a Delaware Limited Partnership, GOKHAN KISACIKOGLU, DAVID W. LENTZ, and DOES 1-15 | |
| *Defendants.* | |
| | **DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.    Angela Stanley trusted the wrong investment advisor and this long-standing relationship led her down a path that she never knowingly agreed to or intended.  She entrusted a rollover contribution of funds from her 401(k) account to an IRA under the management of David W. Lentz ("Lentz") a decade ago.  Her investment profile was coded as seeking capital appreciation and a designation of "Low Risk".  As Lentz changed investment firms, her IRA followed him multiple times.

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

2.     Each time, Lentz supplied what paperwork he represented was necessary to move her IRA.  He helpfully instructed her where to sign.  Given the longevity of the investment advisor relationship, she relied upon him to fulfill his fiduciary duties to act in her best interests, and she executed whatever paperwork Lentz provided. Unbeknownst to her, however, in Fall 2020, Lentz was on a downward trajectory in his own career.  Lentz ceased to be a registered investment advisor.  Lentz landed at Quants Capital Management, Inc. ("Quants Capital") – a questionable investment advisory business with a long list of disciplinary and non-compliance issues that was led by Gokhan Kisacikoglu ("Kisacikoglu").

3.     Once at Quants Capital, Lentz arranged for the transfer of Ms. Stanley's conservative, low-risk IRA funds from the custodian for his previous firm.  He represented to Ms. Stanley that this move was like his prior investment advisory firm moves.  But nothing could have been farther from the truth.  This was the first step to secure Ms. Stanley's funds in a fraudulent scheme that continues to date.  Over the past five years, Lentz, Kisacikoglu, and Quants Capital have made false statements and representations to Ms. Stanley about the initial transfer of her funds and their use of those funds to purchase unregistered securities, i.e. limited partnership interests they referred to as investments that they termed as "Class C Interests" and "Class A Interests" in Quants Fund LP ("Quants Fund").  Further, Lentz, Kisacikoglu, and Quants Capital willfully withheld material information that was critical to correcting their misleading statements.

4.     Ms. Stanley trusted Lentz, and by extension Kisacikoglu, as the representatives of Quants Capital and Quants Fund.  She relied upon Lentz's advice and instructions as she had for over a decade, and did what he and Kisacikoglu said, expecting and relying upon them to fairly disclose all material facts and to ensure her IRA funds were managed appropriately.  Defendants betrayed that trust and defrauded Ms. Stanley into entrusting her money to them, causing Ms. Stanley to suffer damages. Defendants have taken and continue to withhold money belonging to Ms. Stanley and

have refused her requests to return the money.

## PARTIES

5.     Plaintiff Angela Stanley is an individual who is a citizen of Virginia Beach, Virginia.  She is currently sixty-seven years old.

6.     Defendant Quant Capital Management, Inc. ("Quants Capital"), formerly known as Quants Corporation from 2015-2017, which in turn was formerly known as Quants Capital LLC from 2010 to 2015, is a California corporation with its principal place of business at 400 Continental Blvd, Suite 600, El Segundo, California 90245. Quants Capital is conducting an investment adviser business in this district and, at all relevant times, has engaged in the securities fraud alleged within this district.

7.     Defendant Quants Fund LP ("Quants Fund") is a Delaware limited partnership with a principal place of business 400 Continental Blvd, Suite 600, El Segundo, California 90245.  Quants Fund's agent for service of process is National Registered Agents, Inc., 1209 Orange Street, Wilmington, Delaware 19801.  Quants Capital is the general partner for Quants Fund.  Quants Fund is engaged in the business of soliciting investments and, at all relevant times, in the securities fraud alleged within this district.

8.     Where appropriate, Ms. Stanley refers to Quants Capital and Quants Fund as the "Entity Defendants."

9.     Ms. Stanley is informed and believes and based thereon alleges that defendant Gokhan Kisacikoglu resides in the state of California in this district. Kisacikoglu is the Chief Executive Office, Secretary and Chief Financial Officer of Quants Capital.  On information and belief, Kisacikoglu is also the Chief Investment Officer for, and owns more than 75% of, Quants Capital.  He also serves as a principal of Quants Fund LP by virtue of his majority ownership of the general partner of Quants Fund LP, and his stated role in the entities in the offering documents.

10.     Ms. Stanley is informed and believes and based thereon alleges that defendant David W. Lentz resides in the state of North Carolina.  Defendant Lentz

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

holds himself out as the Director of Trading for Quants Fund LP and is listed as member of the board of directors for Quants Capital Management, Inc.  Lentz arranged for the transfer of Ms. Stanley's assets to Quants Management and its bank accounts within this district.  As such, Lentz is engaged in business within this district given his role and conduct giving rise to this action.

11.    Where appropriate, Ms. Stanley refers to Kisacikoglu and Lentz as the "Individual Defendants."  The Entity Defendants and Individual Defendants shall be collectively referred to as "Defendants."

12.    Ms. Stanley alleges on information and belief that Kisacikoglu owns or controls the assets of Quants Capital and Quants Fund.   She is informed and believes, and thereon alleges, that at all material times, a unity of interest and ownership has existed between Quants Capital and Quants Fund on the one hand and Kisacikoglu on the other hand, such that the individuality and separateness of these companies and this individual ceased to exist, and that Kisacikoglu became and continues to be the alter ego of Quants Capital and Quants Fund.

13.    Ms. Stanley is further informed and believes, and based thereon alleges, that at all material times Kisacikoglu (a) dominated, influenced, and controlled the business, property and affairs of Quants Capital and Quants Fund; (b) intermingled the assets of Quants Capital and Quants Fund to suit his convenience; (c) used the assets of Quants Capital and Quants Fund for his individual and independent business use; and (d) withdrew the assets of Quants Capital and Quants Fund for his individual and independent business use.  Adherence to the fiction of the separate existence of the entities of Quants Capital and Quants Fund as entities distinct from Kisacikoglu would permit an abuse of the corporate privilege and would sanction fraud or promote injustice in that the entities and individual could escape liability for conduct alleged herein.

14.    Ms. Stanley is ignorant of the true names and capacities of defendants Doe 1 to 15 and therefore sues them by such fictious names.  Ms. Stanley will amend

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

1   this complaint to allege their true names and capacities once ascertained.

2       15.     Ms. Stanley is informed and believes and based thereon alleges that, at

3   all times relevant herein, Does 1 to 15 were agents, employees, partners, or joint

4   venturers of the other defendants and acted within the course and scope of such agency,

5   employment, partnership, or joint venture.

6       16.     Ms. Stanley is informed and believes and based thereon alleges that Does

7   1 to 15 are liable for the torts and other wrongs that she alleges herein and that such

8   defendants proximately caused her injuries and damages.

9                         **JURISDICTION AND VENUE**

10      17.     This Court has subject matter jurisdiction over this action pursuant to

11  28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00, exclusive of

12  interest and costs, and is between citizens of different states (Virginia on one hand,

13  and California, Delaware and North Carolina on the other).

14      18.     This Court also has subject matter jurisdiction of this action pursuant to

15  28 U.S.C. §§1331 and 1337 and §27 of the Exchange Act of 1934 (15 U.S.C. § 77aa).

16  Plaintiff's claims arise under Section 10(b) and 20(a) of the Exchange Act (15 U.S.C.

17  §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated by the U.S. Securities and Exchange

18  Commission ("SEC") (17 C.F.R. 240.10b-5) and §§ 12 and 17 of the Securities Act of

19  1933 (15 U.S.C. §§ 77l and 77q).

20      19.     This Court has supplemental jurisdiction over the state law claims

21  pursuant to 28 U.S.C. § 1367(a) because they are related to claims within this Court's

22  original jurisdiction such that they form part of the same case or controversy under

23  Article III.

24      20.     This Court has personal jurisdiction over Plaintiff because she consents

25  to the Court's jurisdiction.

26      21.     This Court has personal jurisdiction over Defendants because they have

27  offices, transact and conduct business, and have violated statutory and common law in

28  the state of California and this district.

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because one or more of the defendants reside in this district and many of the acts giving rise to the violations of which Ms. Stanley complains took place in this district and the Defendants used the instrumentalities of interstate commerce including wire and mail in connection with the sale of unregistered securities in this district; the offering materials and the efforts to sell the unregistered securities was solicited from this district and Plaintiff's funds were sent to this district.

23.     Venue is also proper in this Court under the governing law provision of the contract that Defendants contend Ms. Stanley executed, which she disputes, provides that "[t]he partners hereby consent to the exclusive jurisdiction of the courts of the State of California and the federal courts of the United States, in each case sitting in Los Angeles County, California, in any proceeding relating to this agreement or the relevant subscription agreement."

## **DEFENDANTS INDUCE PLAINTIFF TO INVEST**

24.     Ms. Stanley is a woman of modest means, having worked in the information technology industry until her retirement in April 2023.  She diligently saved through company-offered investment opportunities such as 401(k) plans.  She was not a sophisticated or accredited investor, having just one IRA account outside of her company 401(k) plans.  Contrary to allegations by Defendants, Ms. Stanley's role in designing computer networks and managing system infrastructure did not render her immune to their fraudulent representations regarding investments.

25.     Ms. Stanley was not a sophisticated investor.  She relied upon Lentz to manage her investments and paid fees to him for those services.  By late 2020, her only assets were her primary residence, a 401(k)-investment account through her then-employer, and approximately $250,000 in investments under management by Lentz.  Her investment account with Lentz represented approximately 65% of Ms. Stanley's net worth at the time.

26.     Ms. Stanley first entrusted management of her investments to Lentz in

or about 2009.  Lentz held himself out as holding securities licenses and as a registered representative and investment advisor.  Based on these representations, she reposed her trust in his management of her rollover funds from company 401k retirement accounts starting in 2009.  As he made changes from one registered firm to another, she followed him and signed paperwork, as instructed by Lentz, that he provided to facilitate the transfer of her funds under his management.  Her investor profile for her accounts with Lentz was always conservative, in that while she sought capital appreciation and growth, she expressly stated that her risk tolerance was low.  As such, her discretionary accounts were coded as "low risk."

27.    On information and belief, during the course of Lentz's work as a registered advisor, he incurred fines and suspensions and was subject to client complaints as a result of rule violations during the course of his employment and work for investor clients, including placing client signatures on documents that they had not signed, and the investment of client monies in unsuitable investments.  Lentz ceased to be registered or affiliated with a registered investment company in or about October 2020.

28.    At no point during his management of Ms. Stanley's monies did Lentz disclose these incidents to Ms. Stanley or provide her with information concerning these proceedings.  Nor did he advise Ms. Stanley that there came to be a time when he ceased to be registered as an investment advisor.

29.    In November 2020, Lentz reached out to Ms. Stanley to advise her of his most recent move from Kestra Investment Services, broker and owner of Thorium Wealth Management, to defendant Quants Capital.  Lentz continued to hold himself out as an investment professional with his signature block on emails reflecting the title of "Director of Trading | Quants Fund LP."  In a telephone call to Ms. Stanley, Lentz explained that he would be sending her the paperwork over to facilitate the transfer of her funds under management to his new company.

30.    Lentz did not disclose to Ms. Stanley any information concerning

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Quants Management, Quants Fund, or principal Kisacikoglu.  Specifically, he failed to disclose that, upon information and belief, Quants Management and its principal Kisacikoglu had previously been licensed before the National Futures Association and been subject to disciplinary proceedings on at least two occasions in 2012 and again in 2017.  After a panel evidentiary hearing in April 2018, the findings of which were affirmed on appeal in May 2020, Kisacikoglu and Quants Management were found to have violated National Futures Association compliance rules and, more troubling, to have engaged in a patten of deceptive and misleading conduct and communications by using promotional material that was highly misleading.  As a result, Quants Management and its principal Kisacikoglu were permanently barred from acting as a principal of an NFA member and suspended from NFA and associate membership.

31.    At no point did Lentz discuss with Ms. Stanley that there would be a change in investment strategy or that the entirety of her IRA would be invested in a single investment.  Nor did she agree to any such changes.  She understood and believed that this would be a continuation of her prior holdings strategy which she understood to be invested in normal marketable securities, mutual funds and money market accounts with a low risk profile in an IRA account.  Ms. Stanley signed the paperwork where Lentz instructed and returned the forms.

32.    Ms. Stanley is informed and believes that, on or after November 16, 2020, Lentz arranged for the wire transfer of the money from the prior custodial account directly to defendant Quants Fund LP's Bank of America Bank Account last four digits 9998.

33.    At no point did Ms. Stanley agree to or understand that her IRA rollover monies would be used to purchase the unregistered securities being offered for sale by the unsigned Confidential Private Placement Memorandum dated October 1, 2020, that was not disclosed to Ms. Stanley until June 2025 – long after her monies were used in this unauthorized fashion.

34.    The following month, Ms. Stanley received documents from Lentz

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax:  (619) 810-4301

purporting to reflect that her monies were held in an account titled as "Pacific Premier Trust FBO Angela Stanley" and that her investment was "Class C Shares" which had purportedly earned a small return since deposit in November 2020. She received comparably titled statements through February 2021. Based on her extremely limited investing experience, she believed that this was consistent with her understanding that Lentz had rolled her prior account into an IRA account consistent with her longstanding "low risk" profile.

35.    On or about March 19, 2021, Lentz called Ms. Stanley, and solicited her to transfer money in her account to acquire limited partnership interests that he described as "Class A Interests," though the supporting illustration materials he sent to her via email referred to these Class A interests as being affiliated with an entity called "Quants, Inc."

36.    In these solicitation materials, Lentz represented to Ms. Stanley that her existing investment in Quants Fund, Class C would earn her a cumulative ROR (rate of return) of 205% over the next four years growing her $235,000 (sic) investment to $716,797. In contrast, Lentz represented that an investment in Quants Inc, Class A, stood to earn Ms. Stanley a cumulative ROR of 1052% over the next four years such that a $50,000 investment would grow to $576,005. Lentz explained that Quants Management would "give" her 25,000 shares of the company in exchange for her investing the funds defendants already held to acquire the Class A shares.

37.    This was the first time that Ms. Stanley learned that some of her money was not invested in the "normal market." Lentz held himself out as proposing investments that were appropriate given her age and financial means and encouraged her to invest more money. Based on the longstanding relationship she reasonably relied upon his advice and recommendations.

38.    After these solicitations by Lentz over the telephone, Kisacikoglu sent pre-filled subscription documents for the purchase of unregistered securities, i.e. Class A Interests in Quants Fund LP with $50,000 of her funds already with Quants

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Management to Ms. Stanley via Docusign.  These were sent on or around April 8, 2021, through the Docusign platform and contained the pre-marked fields that she was required to initial or sign.

39.    Throughout the document, there are initials placed where Lentz and Kisacikoglu directed, which include: (i) a representation that Ms. Stanley was an "accredited investor," which she was not and has never been; (ii) a representation that she had received Part II of Form ADV for Quants Capital, which she did not receive and has never seen probably because that document includes a long list of disciplinary and non-compliance issues regarding the company and its principal Kisacikoglu; and (iii) a purported investor suitability questionnaire that Ms. Stanley did not fill out because she had not previously invested in investment partnerships or hedge funds, equity derivatives, options, commodities, or futures.  Nor had she ever provided information regarding her employer or statements concerning her knowledge and experience of financial matters.  These documents contained extensive misrepresentations and were signed by Kisacikoglu at the time they were provided to Ms. Stanley.  Notably, this email and the accompanying Docusign and documents in early April 2021 are Ms. Stanley's first direct communications from Kisacikoglu.

40.    Lentz and Kisacikoglu's efforts were successful in that Ms. Stanley signed the documents as they directed and they used her money to "purchase" unregistered securities in the form of Class A interests in Quants Fund LP.

41.    During 2023, Ms. Stanley transferred an additional $62,391.66, reflecting the rollover of additional 401(k) monies, to Lentz and Kisacikoglu for the purchase of additional unregistered securities.

42.    Due to her financial needs, in August 2023, Ms. Stanley began withdrawing $2,000 per month to assist with her living expenses while the accounts continued to appreciate.  Ms. Stanley had stressed to Lentz that she needed to be able to access the monies at any time because these funds combined with her house, were the only assets she had for her retirement.

43.     Over the course of 2023 and 2024, she withdrew $32,000.   Lentz assured her that there was no issue with her continuing to make these withdrawals and he provided information reflecting the continued growth of her investment account monthly through a google drive.

44.     By 2025, Ms. Stanley's investment and ownership of unregistered Class A and Class C shares of Quants Fund had grown to over $800,000 through additional contributions by her and purported gains in the value of both classes of investments.

45.     Inexplicably, however, in May 2025, Ms. Stanley's request to transfer $2,000 from her investment to cash in her accounts was denied.   On May 19, 2025, Lentz explained that Defendants had "suspended distributions from the fund as a precautionary measure to protect the long term interests of the investors until things stabilize and we can resume trading as before."   Lentz suggested that Ms. Stanley just ask her new husband for funds.

46.     Ms. Stanley asked when the suspension would change and whether she could draw from her IRA instead.   Lentz's response was "I will have to check when this will update.   Correct, we are putting a pause for time being."   Notably, Lentz did not correct Ms. Stanley's understanding that a portion of her monies under his management were separate and apart from the fund, i.e. in an "IRA" account.   In response to Lentz's message, Ms. Stanley sought to involve her husband in discussions and the following day, they began pressing for a conversation to understand the details surrounding the trading suspension.

47.     Over the next week, Lentz dodged Ms. Stanley's requests for a call over what she characterized as "grave concerns" about the health of Quants and her inability to access the money in her account.   In the face of Ms. Stanley's involvement of a more knowledgeable person and more pointed questions, miraculously, on May 28, 2025, Lentz said, "we'll be processing the $2,000 request" and represented that she'd soon be able to access it.   He tried to push off the scheduled call, but Ms. Stanley held firm with her demand for a conference call.   They spoke on May 30, 2025, but Lentz

was unable to answer many of Ms. Stanley's questions. Lentz stated that Kisacikoglu would need to be involved in a subsequent call.

48.     For over two weeks, Ms. Stanley and her husband requested that a call be set up and requested copies of documents. Lentz and Kisacikoglu dragged their feet until they realized a discussion would be inevitable. On June 12, 2025, Ms. Stanley finally received via email from Lentz for the first time copies of the Confidential Private Placement Memorandum dated October 1, 2020 for Limited Partnership Interests of Quants Fund, LP (sic) for Class C Interests and the Confidential Private Placement Memorandum dated March 24, 2021 for Limited Partnership Interests of Quants Fund, LP (sic) for Class A Interests (collectively, the "Offering Materials").

49.     The following day, June 13, 2025, Ms. Stanley, her husband, Lentz and Kisacikoglu attended a conference call. During that call, Ms. Stanley requested copies of all regulatory filings and financial information, including a current balance sheet and a profit and loss statement, pertaining to the unregistered securities that she held. To date, she has not received any such documents.

50.     On July 21, 2025, Ms. Stanley demanded that her account be liquidated, and all funds be returned to her. To date, Lentz and Kisacikoglu have refused to return her monies.

51.     Ms. Stanley's investor account statements dated September 30, 2025 reflected a value of $349,268.08 in Class A shares and $482,259.24 in Class C Shares for a total balance of $831,527.32. Recent account snapshots from the trustee that holds her funds, taken on November 12, 2025 and January 22, 2026, reflect a slightly lower balance of $799,480.

**The Sale and Purchase of Unregistered Securities**

52.     In 2020, 2021, and 2023, the Individual Defendants and the Entity Defendants, solicited Ms. Stanley to purchase, and they sold to Ms. Stanley unregistered securities in the form of "limited partnership" interests in Quants Fund

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

LP. In doing so, the Individual defendants and the entity defendants used the instrumentalities of interstate commerce in connection with the sale and purchase of those unregistered securities.

53.    The individual defendants and the entity defendants purport that they solicited and sold unregistered securities by the use of a confidential private offering memorandum.

54.    In that private offering memorandum, defendant Quants Management identified itself as both the general partner of Quants Fund and in charge of operations for it, with control over the issuance of the unregistered securities.

55.    Ms. Stanley is informed and believes that the security offerings were not registered under federal or California's (or any other jurisdiction's) securities laws and regulations.

56.    During the relevant period, Ms. Stanley was not an accredited investor pursuant to Securities Act Rule 501, 17 C.F.R. § 230.501.  Additionally, by offering the securities via, among other means, "cold calling" her to switch her investment from a protected IRA to a purchase of unregistered securities, with no limitation placed on prospective investors' financial experience or sophistication needed to invest, Defendants solicited investments via general solicitation.  As a result, Defendants were required to take reasonable steps to verify that its investors were accredited, which they did not do.  Indeed, Defendants knew that Ms. Stanley was not an accredited investor due to Lentz's lengthy tenure as her investment advisor.  Defendants also did not provide Ms. Stanley, as an unaccredited investor, with the requisite non-financial and financial information described under Securities Act Rule 502(b), 17 C.F.R. § 230.502(b).  Accordingly, the securities offering does not qualify for registration exemptions under Securities Act Rules 504, 505 (which was revoked during the relevant period), and 506(b), 17 C.F.R. §§ 230.504, 505, and 506(b).    No other registration exemption is available for Defendants' offering.

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax:  (619) 810-4301

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

57.     Ms. Stanley has paid Defendants in excess of $312,000 in connection with her purchase of the Class A and Class C shares of Quants Fund.

58.     Ms. Stanley is informed and believe that the Individual Defendants and Quants Management acted as control persons within the meaning of §20(a) of the Exchange Act, as further alleged below.

**Material Misrepresentations and Non-Disclosures**

59.     Ms. Stanley is informed and believes that, in connection with the sale of unregistered securities, the Individual Defendants and the Entity Defendants made material misrepresentations of fact and failed to disclose material facts, disclosure of which was necessary to make what they stated not false and misleading to induce her to purchase the limited partnership interests.

60.     Lentz failed to disclose material information concerning his licensing and registration, including suspensions, customer disputes, and that he ceased to be a registered investment advisor.  He also failed to fully explain to Ms. Stanley that his proposal was that she transfer her brokerage investment account from his prior registered brokerage firm to Quants Capital for the purpose of making a private equity investment in Quants Fund, which was a completely different risk profile.   This information was material to Ms. Stanley's relationship with him and the trust that she reposed in him to make investment decisions on her behalf.

61.     Lentz further failed to disclose material information concerning Kisacikoglu and Quants Capital's disciplinary proceedings, which was necessary information for Ms. Stanley to evaluate whether she wished to continue working with Lentz given his move to Quants Fund.

62.     Lentz failed to disclose the offering materials for the alleged investment in the Class C interests in Quants Fund to Ms. Stanley prior to transferring her money to Quants Fund.   Specifically, Lentz falsely represented verbally to her that her investments were in an IRA and that she could access the money at any time.

63.     The Individual Defendants and Entity Defendants also falsely

represented that she received and reviewed the written solicitation materials that they purport to have provided. The written solicitation materials that Defendants rely upon also falsely represent that Ms. Stanley has the right to withdraw all her money, i.e. capital account, upon twenty days-notice as of the last business day of any calendar quarter. Here, Ms. Stanley made the request to withdraw all of the balance of her capital account on July 21, 2025, well in advance of the quarter ending September 30, 2025 and the Individual Defendants have failed and refused to direct the Entity Defendants to release Ms. Stanley's funds.

64. Ms. Stanley is informed and believes that the Individual Defendants and the Entity Defendants knew these material misrepresentations were false and misleading when they made them and knew that she did not know that those representations were false.

65. Ms. Stanley is also informed and believes that the Individual Defendants and Entity Defendants withheld material information from her that she was entitled to receive.

**Safe Harbor Provision Is Inapplicable**

66. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements alleged herein. The statements pled were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**Loss Causation/Economic Loss**

67. At all relevant times, as detailed above, the Individual Defendants and Entity Defendants engaged in a scheme and course of conduct to create and then manipulate a market for and artificially inflate the price of unregistered securities.

68. The Individual Defendants and Entity Defendants carried out this scheme by making false and misleading statements to Ms. Stanley about the

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

unregistered securities they sold and by manipulating the market for those securities.

69.     When Ms. Stanley learned of these misrepresentations and omissions, the market for those securities collapsed with no buyers available.  Defendants refused to refund Ms. Stanley her account balance.

70.     As a result of these purchases of unregistered securities from Defendants, Ms. Stanley has suffered economic loss, i.e. damages under the federal securities laws in that the securities have substantially less value than what the Defendants represented.

71.     The damage Ms. Stanley suffered is a direct result of Defendants' false statements and their manipulation of the market until she finally knew the nature and extent of defendants' fraud.

## FIRST CLAIM FOR RELIEF

## Violation of Section 10(b) of the Exchange Act and Rule 10b-5

## (Against All Defendants)

72.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

73.     At all relevant times, the Individual Defendants and the Entity Defendants carried out a plan, scheme and course of conduct which was intended to and did: (i) deceive Plaintiff as alleged above; (ii) enable the Individual Defendants and the Entity Defendants to sell unregistered securities to Plaintiff; and (iii) cause Plaintiff to purchase unregistered securities from them at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, each defendant, jointly and individually took the actions stated above.

74.     The Individual Defendants and the Entity Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make  the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

and deceit upon the purchasers of unregistered securities from Defendants, including Plaintiff in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

75.    Plaintiff sues each defendant either as a primary participant in the wrongful and illegal conduct charged or as a controlling person as alleged below.

76.    The Individual Defendants and the Entity Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, each engaged and participated in a continuous course of conduct to make misrepresentations of material facts and to conceal adverse material information about the unregistered securities defendants sold, as specified in this complaint.

77.    The Individual Defendants and the Entity Defendants employed devices, schemes and artifices to defraud, while in the possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged above in an effort to assure Plaintiff that the unregistered securities the individual and entity defendants sold were suitable for investors like Plaintiff, which included the making of, or the participation in the making of, untrue statements of material fact and omitting to state material facts necessary to make the statements made about the unregistered securities in the light of the circumstances necessary to make them non misleading.  Further Defendants engaged in transactions, practices and a course of conduct of business which operated as a fraud and deceit upon Plaintiff as a purchaser of unregistered securities from the Defendants.

78.    The Individual Defendants and the Entity Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth, or acted with deliberate disregard for the truth in that they failed to ascertain and to disclose such facts.  Their material misrepresentations and/or omissions were done knowingly or deliberately and for the purpose and effect of concealing the truth about the unregistered securities from Plaintiff.  If either of the Individual Defendants did not have actual knowledge of the misrepresentations and omissions alleged, he was

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax:  (619) 810-4301

reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

79.    As a result of the dissemination of the materially false and misleading information and/or failure to disclose material facts, as set forth above, the market and prices of the unregistered securities the Individual Defendants and the Entity Defendants sold to Plaintiff were manipulated and were artificially inflated.

80.    In ignorance of the fact that the market prices of unregistered securities were manipulated and artificially inflated, and relying directly or indirectly on the false and misleading statements and/or omissions the Individual Defendants and the Entity Defendants made, and/or on the absence of material adverse information that defendants knew or deliberately disregarded or chose not to disclose, Plaintiff acquired and continues to hold unregistered securities the Defendants sold at artificially high prices and have been damaged as a direct and proximate result.

81.    At the time of these misrepresentations and omissions, Plaintiff was ignorant of their falsity, and believed them to be true.  Had Plaintiff known the truth regarding the manipulation of and risks associated with the unregistered securities the individual and entity defendants sold, which those defendants did not disclose, Plaintiff would not have purchased or continued to hold the unregistered securities.

82.    By virtue of the foregoing, the Individual Defendants and the Entity Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5.

83.    As a direct and proximate result of the Individual Defendants and the Entity Defendants' wrongful conduct, Plaintiff suffered money damages of at least $800,000, the exact amount of which will be proven at trial, as a result of her purchases of unregistered securities sold by defendants.

///

///

///

///

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

## SECOND CLAIM FOR RELIEF

### Violation of Section 20(a) of the Exchange Act

### (Against the Individual Defendants and Quants Capital)

84.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

85.     The Individual Defendants each acted as a control person of defendants Quants Capital and Quants Fund within the meaning of Section 20(a) of the Exchange Act as alleged above.

86.     The Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making by defendants Quants Capital and Quants Fund, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

87.     In addition, defendant Quants Capital acted as a control person of Quants Fund, within the meaning of Section 20(a) of the Exchange Act as alleged above.  Defendant Quants Capital had the power to influence and control and did influence and control, directly or indirectly, the decision-making by Quants Fund, including the contend and dissemination of various statements which Plaintiff contends are false and misleading.

88.     As set forth above, the Individual Defendants and defendant Quants Capital each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this complaint.

89.     By virtue of their positions as controlling persons, the Individual Defendants and Quants Capital are liable pursuant to Section 20(a) of the Exchange Act.

90.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff suffered damages of at least $800,000, the exact amount of which she will prove at trial in connection with the purchase and retention of unregistered securities from Defendants.

1

2

3

4

5

6

7

8

9

10

11

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CLAIM FOR RELIEF**

**Violation of the Securities Act of 1933**

**(Against All Defendants)**

91.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

92.     The Individual Defendants and the Entity Defendants' conduct as alleged above violates the Securities Act of 1933, 15 U.S.C. §§77a, et seq. ( the "Securities Act"), and specifically Sections 12 and 17, 15 U.S.C. §§77l and 77q, in that Defendants used interstate commerce for fraud and deceit and offered and sold securities in interstate commerce for fraud and deceit and offered and sold securities in interstate commerce with written material, including the offering memoranda for Quants Fund that included untrue statements of material fact and omissions of material fact.

93.     As a direct and proximate result, Plaintiff has suffered money damages of at least $800,000, the exact amount of which they will prove at trial.

**FOURTH CLAIM FOR RELIEF**

**Fraud and Deceit**

**(Against All Defendants)**

94.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

95.     Defendants Lentz, Kisacikoglu, Quants Capital, and Quants Fund repeatedly represented that Plaintiff had the right and ability to withdraw all or any portion of the monies from her account at any time.  These representations were false.

96.     In conversations between Lentz, and later Kisacikoglu, and Plaintiff, the individual defendants further represented that they were working for and acting in Plaintiff's best interests.  They further assured Plaintiff that she could withdraw her money at any time.

97.     The Individual Defendants concealed from Plaintiff that they had no

intent to honor Plaintiff's requests to withdraw the entirety of her investment.

98.     In written offering materials that Defendants falsely contend Plaintiff received, the Entity Defendants represented that Plaintiff could withdraw her money at any time from her capital accounts.

99.     Defendants have consistently failed to disclose the true facts. Defendants' acts and practices were intended to induce and lure, and did induce and lure, Plaintiff into agreeing to transfer her IRA funds to the Entity Defendants, which the Individual Defendants used to purchase the unregistered securities without Ms. Stanley's knowing approval for such purchases.

100.    Defendants knowingly, intentionally and/or recklessly made false statements of material fact; omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, and concealed material information from Plaintiff.

101.    In justifiable reliance upon Defendants' material misrepresentations and omissions, and without knowledge of the truth, Plaintiff purchased the unregistered securities, entrusting defendants with over $312,000 over the course of five years. Had Plaintiff known of the material misrepresentations and omissions contained in the information provided by Defendants and written materials they contend they provided, Plaintiff would not have permitted the transfer of her money. Because of the foregoing, Plaintiff has suffered losses and general and special damages in an amount to be proven at trial.

102.    Defendants' conduct was willful, despicable, and malicious, and warrants the imposition of exemplary damages against them in an amount sufficient to deter them from such wrongful conduct in the future.

///

///

///

///

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

## FIFTH CLAIM FOR RELIEF

### Violation of California Business & Professions Code §17200 et seq.

### (Against All Defendants)

103.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

104.     By their conduct, the Individual Defendants and the Entity Defendants engaged in unlawful and unfair business acts and practices in violation of California Business and Professions Code §17200 *et seq.* by committing torts and/or violating laws, statutes and regulations, including without limitation by violating federal securities laws.

105.     As a direct result of Defendants' unfair business practices, Plaintiff has been injured in fact, lost money and sustained substantial economic harm as alleged herein.  Plaintiff seeks an injunction that requires Defendants to immediately cease acts of unfair and fraudulent business acts or practices and to enjoin defendants from continuing to engage in such acts or practices in the future.  Plaintiff also seeks restitution and all other remedies permitted by law.

106.     Defendants' conduct was willful, despicable, and malicious, and warrants the imposition of exemplary damages against them in an amount sufficient to deter them from such wrongful conduct in the future.

## SIXTH CLAIM FOR RELIEF

### Breach of Contract

### (Against Kisacikoglu, Quants Capital)

107.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

108.     Defendants contend that Plaintiff knowingly executed Quants Fund, LP Limited Partnership Agreements for Class C Interests and Class A Interests (the "Agreements") in late 2020 and early 2021, respectively, which Plaintiff disputes. As

an alternate theory of recovery, Plaintiff asserts a claim for relief based on the breaches of contracts that Defendants contend are applicable to the parties' relationship.

109.    These Agreements provided, in part, that "[a] Limited Partner may generally withdraw all or any part of the balance of any Capital Account(s) of such Limited Partner as of the last Business Day of any calendar quarter, upon not less than twenty (20) calendar days prior written notice to the General Partner".   Article VI, §6.1(a).

110.    Plaintiff made a written demand for the return of monies in her account on or about July 21, 2025, and again on November 24, 2025.  Each of these demands was made more than twenty days before the end of a calendar quarter.

111.    Defendants Quants Capital and Kisacikoglu was required to return Plaintiff's monies in the manner provided for by these Agreements.

112.    Defendants Quants Capital and Kisacikoglu have refused and continue to refuse to perform their obligations to return Plaintiff's monies under the Agreements they contend are in full force and effect.

113.    The Agreements also provided for the maintenance of records regarding the determination and calculation of liabilities and valuation of assets.  See Article VIII.   To this end, Defendants agreed to provide reports, accounting, and tax information and schedules.

114.     Defendants Quants Capital and Kisacikoglu have failed to perform their recordkeeping obligations or to provide tax documents to Plaintiff, which is required under the Agreements they contend are in full force and effect.

115.    As a direct and proximate result of these breaches, Plaintiff has suffered money damages in an amount to be determined at trial.

///

///

///

///

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

## SEVENTH CLAIM FOR RELIEF
### Imposition of Constructive Trust
### (Against All Defendants)

116.   Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

117.   Plaintiff is informed and believes that the Individual Defendants and Quants Capital have received moneys that rightfully belong to Plaintiff because of Defendants' use of her money to purchase of the unregistered securities in Quants Fund.

118.   By virtue of this "investment" in Quants Fund, Plaintiff acquired a lien and security interest in any proceeds that Defendants received.

119.   Plaintiff is informed and believes that the Individual Defendants and Quants Capital have wrongfully, unfairly, unjustly, and inequitably received, disbursed, and retained such profits and proceeds for themselves.

120.   In the interests of fairness, justice, and equity, this Court can and should issue an order and enter judgment:

  a.  Imposing a constructive trust over all such profits and proceeds;

  b.  Decreeing that the Individual Defendants and/or Quants Management hold such funds in trust for the benefit of Plaintiff; and

  c.  Requiring the Individual Defendants and Quants Management to disgorge those funds to Plaintiff.

121.   Accordingly, Plaintiff seeks, in addition to other relief, the imposition of a constructive trust on any and all monies the Individual Defendants and defendant Quants Management received.

WHEREFORE, plaintiff demands judgment from Defendants as follows:

  1.   For compensatory damages in an amount to be proven at trial;

  2.   For punitive damages in an amount to be proven at trial;

  3.   For restitution in an amount to be proven at trial;

4.     For the imposition of a constructive trust on all monies any Defendants received as a result of their scheme;

5.     For attorneys' fees and costs of suit; and

6.     For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 23, 2026          Respectfully submitted:

HAHN LOESER & PARKS LLP


By:     *s/ Jenny L. Dixon*
        Jenny L. Dixon
        Attorneys for Plaintiff Angela Stanley

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301