UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **‘O’**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-01555-CAS-RAOx | Date | July 30, 2026 |
| Title | Lloyd Greif et al. v. ADT LLC et al. | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| | | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - MOTION TO DISMISS PLAINTIFFS’ FIRST AMENDED COMPLAINT (Dkt. 24, filed on July 9, 2026)

## I. INTRODUCTION

The Court finds that this matter may be appropriately decided without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

On January 13, 2026, plaintiffs Lloyd Greif and Renée Greif (collectively, the “Greifs”) filed this action against defendant ADT LLC dba ADT Security Services (“ADT”) in the Los Angeles County Superior Court.

On February 13, 2026, defendant removed plaintiffs’ action to this Court on the basis of diversity jurisdiction. Dkt. 1.

On March 13, 2026, defendant filed a motion to dismiss plaintiffs’ complaint. Dkt. 13. On April 13, 2026, plaintiffs filed a first amended complaint, mooting defendant’s motion to dismiss.[1] On June 25, 2026, plaintiffs filed their operative first amended complaint. Dkt. 23 (“FAC”). The FAC asserts the following claims against ADT: (1) breach of implied-in-fact contract; (2) negligence; (3) gross negligence; and (4) unfair competition, Cal. Bus. and Prof. Code § 17200 (the “UCL”). See id.

[1] Plaintiffs filed a first amended complaint on April 13, 2026, dkt. 15, and subsequently withdrew that complaint in order to seek leave to file a new complaint. Dkt. 19. On June 25, 2026, the Court granted plaintiffs’ unopposed motion for leave to file their operative first amended complaint. Dkt. 22.

On July 9, 2026, defendant filed the instant motion to dismiss plaintiffs’ FAC. Dkt. 24 (“Mot.”). On July 20, 2026, plaintiffs filed an opposition. Dkt. 25 (“Opp.”). On July 27, 2026, defendant filed a reply. Dkt. 26 (“Reply”).

Having carefully considered the parties’ arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiffs allege the following in their operative FAC.

### A. The Parties

Plaintiffs Lloyd Greif and Renée Greif are residents of Los Angeles. FAC ¶ 5-6.

Defendant ADT is a Delaware limited liability company that conducts substantial and continuous business throughout California, including in Los Angeles County, by marketing, selling, and providing residential alarm monitoring and patrol/guard response services. Id. ¶ 7.

### B. Factual Allegations

Plaintiffs are longstanding customers of ADT and, through their decades of purchasing and paying for residential security services from ADT and through ADT’s provision of those services at plaintiffs’ Los Angeles residence, entered into an implied-in-fact contractual relationship with ADT for residential security services, including alarm system monitoring and patrol/guard response to alarm activations. Id. ¶ 13.

The essence and principal purpose of the implied-in-fact contract was for ADT to provide timely, competent monitoring and response to alarm activations to protect plaintiffs’ home, property, and personal security, including by providing reasonable investigation and appropriate escalation when circumstances indicated a break-in or threat. Id. ¶ 14.

For the entire time plaintiffs have subscribed to ADT’s services, Plaintiffs have performed by paying for those services and complying with their account obligations, and ADT accepted and performed under the agreement by providing monitoring and patrol/guard response, thereby manifesting mutual assent by conduct. Id. ¶ 15.

For decades, plaintiffs entrusted ADT with the critical tasks of securing, monitoring, and protecting their residence. Id. ¶ 18. But, on the evening of February 14, 2025, and into the early morning of February 15, 2025, ADT broke several of its promises to Plaintiffs. Id.

Plaintiffs were out of town on the evening of February 14, 2025. Id. ¶ 19. At approximately 8:26 p.m., ADT received a carbon monoxide alarm activation originating from plaintiffs' home. Id. The alarm was caused by burglars attempting to cut into a safe, generating steel and concrete dust. Id. In attempting to suppress the alarm, the burglars smashed alarm panels and several smoke and carbon monoxide detectors. Id.

ADT contacted plaintiffs at or around 8:30 p.m. Plaintiffs informed ADT they were out of town and requested that ADT dispatch a security guard and the fire department to investigate and report back. Id. ¶ 20.

An ADT guard and the Los Angeles Fire Department arrived at approximately 8:45 p.m. At about 8:48 p.m., the ADT guard inspected windows facing the motor court. The home office—visible from the front—had already been ransacked, with drawers and cabinets left open and items strewn about, as confirmed by camera footage showing the burglars actively looting the office between approximately 8:02 p.m. and 8:08 p.m. Id. ¶ 21.

Despite this obvious evidence of intrusion, the ADT guard failed to conduct a reasonable perimeter check and failed to notify the Los Angeles Police Department. Id. ¶ 22. Had the guard checked the right-side French doors, he would have seen that the lower half of one door was broken out with broken glass on the landing—plain evidence of forced entry. Id. Upon inspecting the property, ADT also failed to report back to the Greifs as they requested. Id.

Due to ADT's failures to take appropriate action, the burglars returned at approximately 9:58 p.m. Id. ¶ 23. ADT received a second alarm—this time a garage door burglary alarm—at approximately 10:13 p.m. Id. Notwithstanding this clear security breach alarm, ADT did not contact plaintiffs about the second alarm, depriving them of the opportunity to insist on a thorough inspection and police involvement. Id.

An ADT guard arrived at approximately 10:30 p.m. Id. ¶ 24. The guard again failed to look into the office window, which would have plainly shown that the room had been ransacked, and failed to conduct a complete perimeter inspection, including of the

right-side entry where a door was broken out and glass was shattered. Id. ADT's records later suggested "false alarm possibly caused by weather," a conclusion refuted by plaintiffs' exterior camera showing calm weather conditions. Id. Moreover, the alarm that activated was on an internal door that led from the house to the garage and was therefore not susceptible to external weather conditions. Id. ADT installed, serviced and maintained the alarm system and should have known that the exterior garage doors were not alarmed. Id. Finally, the fact that two separate and distinct alarm activations occurred within the span of less than two hours should have put ADT on notice that a more careful and complete inspection of the premises was warranted. Id.

The burglars returned a third time shortly after midnight, now emboldened by ADT's continued inaction. Id. ¶ 25. They disabled driveway cameras, drove a car through the gate and up the driveway, and broke down the front door while attempting to remove the safe. Id. ADT received a third burglary alarm at approximately 12:24 a.m. on February 15, 2025. Id.

An ADT guard arrived at approximately 12:55 a.m., observed the smashed front door and the safe outside the entry, and finally called LAPD at approximately 1:07 a.m., with police arriving at approximately 1:43 a.m. Id. ¶ 26. Even at that point, the guard did not complete a full perimeter inspection, including the broken right-side door. Id.

In total, ADT had three separate opportunities to competently investigate and escalate matters by calling LAPD yet failed to do so in a timely manner and failed to conduct reasonable perimeter inspections of the property. Id. ¶ 27. These failures allowed the burglars to make repeated entries over several hours, greatly expanding the scope of the theft and damage and causing significant disruption, expense, and harm. Id.

To date, plaintiffs' economic damages include at least $51,119 in out-of- pocket expenses to secure and repair the premises and replace and reconfigure security equipment, plus $168,935 for stolen property, for a combined total of at least $220,000. Id. ¶ 28.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court

properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

### B. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non-fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

## IV. DISCUSSION

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs' FAC. Mot. at 2.

**A. Breach of Implied-in-Fact Contract**

Defendant argues that plaintiffs' claim for breach of implied-in-fact contract fails because plaintiffs have an express written contract with ADT covering the same subject matter. Mot. at 12. Specifically, defendant argues that "the subject matter of [p]laintiffs[']implied-in-fact contract—alarm system installation, system monitoring, and signal response—is identical to the subject matter of the parties' [express] Contract." Id. at 13. Defendant attaches an express contract signed by plaintiff Renee Grief along with exemplar terms and conditions consistent with the standard ADT contract from the relevant time period. Id. at 13 (citing dkt 24-4 ("Ex. A")).

In opposition, plaintiffs argue that defendant does not establish that the attached contract is the contract that plaintiff signed. Opp. at 6. Plaintiffs then argue that because the contract supplied by ADT is a reconstructed document whose authenticity plaintiffs dispute, plaintiffs' breach of implied-in-fact contract claim cannot be dismissed at this stage. Id. at 7.

In reply, defendant argues that its inability to produce the original contract does not create an authenticity dispute because ADT has submitted the signed contract page, established that the exemplar terms were the form terms used for customers during the relevant period, and has confirmed that plaintiffs received services under those terms for decades. Reply at 6. Defendant further argues that because there is no authenticity dispute, the Court should properly consider ADT's exemplar contract terms in resolving the instant motion. Id. at 9.

"[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." Stewart v. Kodiak Cakes, LLC, 537 F. Supp. 3d 1103, 1158–59 (S.D. Cal. 2021). Here, however, plaintiffs never allege that a valid express contract exists between plaintiffs and ADT. See FAC ¶ 12-13 (alleging an "implied-in-fact contractual relationship"; an "implied-in-fact contract"; and "The Implied Security Services Contract").

At the motion to dismiss stage, a court may consider documents outside of the complaint when "the plaintiff's claim depends on the contents of [the] document[s], the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." Knievel v. ESPN, 393 F.3d 1068, 1076

(9th Cir. 2005). While ADT attaches an express contract to its motion and alleges that this express contract covers the same subject matter of the implied-in-fact contract alleged by plaintiffs, see dkt. 13-4, plaintiffs dispute whether the exemplar terms are indeed the terms that were attached to the contract they signed with ADT. See Opp. at 6. Because the Court must take plaintiffs’ allegations as true at the motion to dismiss stage and because the plaintiffs dispute the authenticity of the exemplar terms, defendant’s argument that an express contract displaces plaintiffs’ breach of the implied-in-fact contract claim fails.

Accordingly, the Court **DENIES** defendant’s motion to dismiss plaintiffs’ first claim for breach of implied-in-fact contract.

### B. Negligence and Gross Negligence

Defendant argues that “plaintiffs’ negligence claim fails as a matter of law because ADT does not owe Plaintiffs a common law duty to provide ‘residential alarm monitoring and patrol/guard response services.’” Mot. at 13.

In opposition, plaintiffs argue that ADT owes them an independent tort duty to provide residential alarm monitoring and patrol/guard response services because the FAC alleges that ADT voluntarily undertook an active security response—dispatching guards to the property on three separate occasions during an active emergency—and negligently performed that undertaking. Opp. at 9-10.

In reply, defendant argues that the alleged security response that ADT “actually undertook” is nothing more than ADT’s performance of the services plaintiffs paid ADT to provide under their residential services contract. Reply at 11. ADT argues that because a contracting party cannot transform a purported breach of contract into a tort claim absent an independent duty imposed by law, plaintiffs’ negligence claims fail.

The elements of an ordinary negligence claim are (1) duty, (2) breach, (3) causation, and (4) damages. Johnson v. Prasad, 224 Cal. App. 4th 74, 78 (2014). The elements for gross negligence are the same save for the additional element of extreme conduct on behalf of the defendant. See City of Santa Barbara v. Superior Court, 41 Cal. 4th 747, 753–54 (2007). However, “[t]he economic loss rule limits a party to a contract ‘to recover[ing] in contract for purely economic loss due to disappointed expectations,’ rather than in tort, ‘unless he can demonstrate harm above and beyond a broken contractual promise.’” Rattagan v. Uber Techs., Inc., 19 F.4th 1188, 1191 (9th Cir. 2021)

(quoting Robinson Helicopter Co. v. Dana Corp., 34 Cal.4th 979 (2004)). "Stated differently, a party to a contract generally cannot recover for pure economic loss—*i.e.*, damages that are solely monetary—that resulted from a breach of contract unless he can show a violation of some independent duty arising in tort." Id. (emphasis in original) (citing Erlich v. Menezes, 21 Cal. 4th 543 (1999)).

Here, plaintiffs allege that "ADT owed a duty of care to Plaintiffs by virtue of providing residential alarm monitoring and patrol/guard response services at Plaintiffs' home," and that "ADT breached the duty of care owed to Plaintiffs" by "fail[ing] to take reasonable steps to adequately monitor and respond to the burglary at Plaintiffs' residence …." FAC ¶¶ 39-42. If there is in fact an express or implied-in-fact contract between plaintiffs and ADT, the economic loss rule forecloses plaintiffs' negligence claim to the extent that the negligence claim is predicated on ADT's same alleged conduct underlying plaintiffs' breach of implied-in-fact contract claim. However, the Court construes plaintiffs' negligence claim against ADT to be made in the alternative to plaintiffs' breach of implied-in-fact contract claim. See id. ¶ 45 ("To the extent the Court determines that [a] … contract governs the relationship between Plaintiffs and ADT, Plaintiffs allege in the alternative that ADT's conduct constitutes gross negligence"); Fed. R. Civ. P. 8(d) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). In other words, plaintiffs allege that ADT owed a duty of care to plaintiffs—by virtue of ADT undertaking to monitor and patrol/guard plaintiffs' home—that is *independent* of any contractual obligation. See FAC ¶¶ 39-42. Accordingly, the economic loss rule does not foreclose plaintiffs' negligence claim at this stage.[2]

While there is no independent tort duty to provide residential alarm monitoring and patrol/guard response services,[3] "one who assumes to act, even though gratuitously, may

---

[2] The Court notes, however, that plaintiffs' negligence claim may be subject to dismissal under the economic loss rule following further development of the record.

[3] See, e.g., Fireman's Fund Ins. Co. v. Morse Signal Devices, 151 Cal. App. 3d 681, 687 (1985) (alarm company not liable for negligence or gross negligence because any duty owed by an alarm company is premised not upon any common-law duty of care but instead upon the company's failure to provide agreed-upon services in a contractual relationship); Valenzuela v. ADT Sec. Servs., Inc., 475 F. App'x 115, 117 (9th Cir. 2012)

thereby become subject to a duty of acting carefully, if he acts at all. If the defendant enters upon an affirmative course of conduct affecting the interests of another, he is regarded as assuming a duty to act, and will thereafter be liable for negligent acts or omissions." Cooper v. State Farm Mut. Auto. Ins. Co., 177 Cal. App. 4th 876, 894 (2009) (cleaned up); see also Restatement (Second) of Torts § 323 ("One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, [may be] subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking …."). "Where a voluntary undertaking gives rise to a duty of care, the scope of such duty depends upon the nature of the undertaking." Cisco Sys., Inc. v. STMicroelectronics, Inc., 77 F. Supp. 3d 887, 895 (N.D. Cal. 2014) (citing Elsheref v. Applied Materials, Inc., 223 Cal. App. 4th 451, 462 (2014)).[4] Here, because plaintiffs allege that ADT undertook to provide residential alarm monitoring and patrol/guard response services at plaintiffs' home and failed to exercise reasonable care in performing such undertaking, plaintiffs adequately allege a claim for negligence.

Accordingly, the Court **DENIES** defendant's motion to dismiss plaintiffs' second claim for negligence.

However, "[t]here is no recognized cause of action for gross negligence under California law" that is distinct from negligence. Alarcon v. Davey, Case No. 16-cv-01461, 2017 WL 1881612, at *11 (E.D. Cal. May 9, 2017). See also Joshi v. Fitness Internat., LLC, 80 Cal. App. 5th 814, 825 (2022) ("Gross negligence is a subspecies of negligence; it is not a separate tort."); Epochal Enterprises, Inc. v. LF Encinitas Properties, LLC, 99 Cal.App.5th 44, 55 (2024) ("'California does not recognize a distinct

("ADT's legal obligation to provide either service arose solely from its contractual relationship with [plaintiff], not from any duty independent of the parties' contract.").

[4] See also Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958) ("The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.").

common law cause of action for gross negligence apart from negligence.'") (citation omitted).

Accordingly, the Court **GRANTS** defendant's motion to dismiss plaintiffs' third claim for gross negligence.

**C. Unfair Competition**

The UCL prohibits "any unlawful, unfair[,] or fraudulent business act or practice and unfair deceptive, untrue[,] or misleading advertising." Cal. Bus. and Prof. Code § 17200. "Because section 17200's definition is 'disjunctive,' the statute is violated where a defendant's act or practice is unlawful, unfair, [or] fraudulent." S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal.App.4th 861, 878 (1999) (citation omitted). The Court therefore addresses each prong in turn.

1. Unlawful

Defendant argues that because plaintiffs rely on their inadequate negligence claims to support their UCL claim and because plaintiffs do not identify any other statute or regulation that ADT allegedly violated, plaintiffs' claim under the "unlawful" prong of the UCL fails as a matter of law. Mot. at 20-21.

In opposition, plaintiffs argue that the unlawful prong is adequately pleaded because their negligence claims are viable. Opp. at 15.

"By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999). Unlawful acts are "anything that can properly be called a business practice and that at the same time is forbidden by law … be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-made." Sybersound Recs., Inc. v. UAV Corp., 517 F.3d 1137, 1151 (9th Cir. 2008) (citation omitted).

"Courts in California appear divided on whether common law claims such as negligence can serve as the predicate violation of law under the UCL unlawful prong." McGarvey v. JP Morgan Chase Bank, N.A., No. 2:13-CV-01099-KJM, 2013 WL 5597148, at *8 (E.D. Cal. Oct. 11, 2013) (citing cases). "But the court need not resolve this tension here [because] defendant does not argue in its motion that negligence cannot

serve as the predicate violation of law, asserting instead that plaintiff does not state a viable negligence claim." Id.

The Court finds that plaintiffs have adequately stated a claim under the "unlawful" prong of the UCL because they have adequately alleged a negligence claim against ADT in the alternative to their breach of implied-in-fact contract claim. See id. ("Because the court has found plaintiff states a viable negligence claim, plaintiff's UCL claim based on unlawfulness may proceed.").

Accordingly, the Court **DENIES** defendant's motion to dismiss plaintiffs' claim under the "unlawful" prong of the UCL.

2. Unfair

Defendant argues that plaintiffs' claim under the "unfair" prong of the UCL fails because plaintiffs do not identify any constitutional, statutory, or regulatory provisions governing alarm-monitoring services that ADT purportedly violated and, moreover, do not allege conduct that offends public policy independent of the parties' private contract. Mot. at 19. Defendant argues that the longevity of the relationship between the parties undermines plaintiffs' allegations that they suffered substantial injury. Id. Defendant argues that plaintiffs' allegations that ADT did not adequately provide services does not amount to an immoral, unethical, oppressive, or unscrupulous business practice and therefore provides no basis for claims of substantial harm. Id. at 20. Defendant further argues that plaintiffs could have reasonably avoided any alleged injury from ADT by switching security service providers. Id.

In opposition, plaintiffs argue that their claim under the "unfair" prong of the UCL is adequate because it relies on California's legislatively declared policy embodied in Civil Code section 1714(a) (general duty of care) and section 1668 (prohibition on exculpatory clauses for gross negligence). Opp. at 16. Plaintiffs argue that the harm they suffered—losses over $220,000—outweighs any benefit they received from ADT's conduct. Id. Plaintiffs further argue that the harm they suffered could not have been anticipated or avoided by a consumer who reasonably relied on ADT to provide competent monitoring services. Id. at 17.

///

///

In reply, defendant argues that plaintiffs fail to identify and tether their UCL unfair claim to a specific legislatively declared policy governing residential alarm systems. Reply at 16-17. Defendant argues that plaintiffs simply repackage their negligence allegations as public policy. Id.

"The UCL's unfair prong can apply to business practices that are against public policy; that are immoral, unethical, oppressive, unscrupulous or substantially injurious; or that cause unforeseeable injuries to consumers that are not outweighed by countervailing benefits." Allen v. Hylands, Inc., 773 F. App'x 870, 874 (9th Cir. 2019) (citations omitted) (cleaned up).

The Court finds that the plaintiffs have adequately alleged a claim under the "unfair" prong of the UCL. Plaintiffs' claim, at least in part, is predicated on the allegation that defendant's conduct "is immoral, unethical, oppressive, and unscrupulous" and "causes substantial injury to consumers that is not outweighed by any countervailing benefits to consumers or competition and that consumers could not reasonably have avoided." FAC ¶ 54. Factual disputes as to whether plaintiffs' alleged injuries are outweighed by countervailing benefits to consumers or competition, and disputes over whether plaintiff could have reasonably avoided their injury, are questions of fact better resolved on a motion for summary judgement. See, e.g., Day v. GEICO Cas. Co., 580 F. Supp. 3d 830, 845 (N.D. Cal. 2022) (finding that plaintiff's allegations that the harm of defendant's conduct outweighs its utility adequately stated a claim under the "unfair" prong of the UCL).

Accordingly, the Court **DENIES** defendant's motion to dismiss plaintiffs' claim under the "unfair" prong of the UCL.

3. Fraudulent

Defendant argues that plaintiffs fail to satisfy the heightened pleading standard under Rule 9(b) to plead that ADT engaged in fraudulent business practices. Mot. at 21. Defendant argues that it is extremely unlikely that ADT's private contract with plaintiffs will deceive members of the public. Id. at 22. Defendant further argues that plaintiffs do not allege any specific false or misleading representations made by ADT. Id.

In opposition, plaintiffs argue that the FAC's current allegations under the "fraudulent" prong of the UCL prong "could benefit from additional specificity" but "does not affect the viability of the UCL claim as a whole." Opp. at 17. Moreover,

plaintiffs request leave to amend in the event that the Court finds their claim under the "fraudulent" prong of the UCL is insufficiently pleaded. Id. ("Plaintiffs are prepared to supplement their allegations with specific factual detail regarding ADT's marketing representations, including the specific communications and materials through which ADT represented to the public that it provides reliable, professional monitoring and emergency response services while systematically failing to deliver on those representations.").

The Court finds that plaintiffs fail to state a claim under the "fraudulent" prong of the UCL because plaintiffs fail to "identify the 'who, what, when, where and how of the misconduct charged' as well as 'what is false or misleading about'" ADT's purportedly fraudulent conduct. See Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the … UCL.").

Accordingly, the Court **GRANTS** defendant's motion to dismiss plaintiffs' claim under the "fraudulent" prong of the UCL, with leave to amend.

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** ADT's motion to dismiss plaintiffs' first claim for breach of implied-in-fact contract.

The Court **DENIES** ADT's motion to dismiss plaintiffs' second claim for negligence.

The Court **GRANTS** ADT's motion to dismiss plaintiffs' third claim for gross negligence, with prejudice.

The Court **DENIES** defendant's motion to dismiss plaintiffs' claim under the "unlawful" prong of the UCL.

The Court **DENIES** defendant's motion to dismiss plaintiffs' claim under the "unfair" prong of the UCL.

The Court **GRANTS** defendant's motion to dismiss plaintiffs' claim under the "fraudulent" prong of the UCL, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-01555-CAS-RAOx | Date | July 30, 2026 |
| Title | Lloyd Greif et al. v. ADT LLC et al. | | |

Plaintiffs shall file an amended complaint, if any, within fourteen (14) days of the date of this order.

The Court **VACATES** the hearing scheduled for August 10, 2026.

IT IS SO ORDERED.

00 : 00

Initials of Preparer CMJ